IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID VAKILI, | : CIVIL ACTION NO. 1:23-CV-104 |
| Plaintiff | : |
| | : (Judge Neary) |
| v. | : |
| | : |
| MTD PRODUCTS INC. and | : |
| TRACTOR SUPPLY COMPANY, | : |
| | : |
| Defendants | : |

**MEMORANDUM**

Juries play a crucial role in the American legal system by resolving factual disputes. But judges can and do decide whether factual disputes exist. To be able to present his case to a jury, a party must show there is at least *some* admissible evidence to prove their case. Here, plaintiff David Vakili alleges a snow thrower was defective because its design lacked a simple safety feature—a cleanout tool. To help prove his case, Vakili enlisted the support of Jack Krafchick, P.E., who authored an expert report finding the subject snow thrower defective and the cause of Vakili's injuries. Defendants MTD Products Inc. and Tractor Supply Company filed a motion to exclude Krafchick's report and a motion for summary judgment. The defendants are correct that Krafchick cannot offer an opinion with respect to causation. As Vakili has no other evidence to establish causation, the court will grant defendants' motion for summary judgment.

I. **Factual Background & Procedural History**[1]

MTD manufactured the subject snow thrower on June 6, 1996, for distribution to Tractor Supply. (Doc. 36 ¶ 1). The snow thrower's single-cylinder engine is turned on in one of two ways: (1) by the traditional rope or coil handle pull-start, or (2) by an electric push-button start, which requires the use of a 120-volt outlet and extension cord. (Id. ¶ 2). The engine powers both a drive system (for forward and backward movement) and a two-stage blade system (for the snow throwing function). (Id. ¶¶ 3-4). A user powers its wheels by engaging the right handle and powers the snow throwing function by using the left handle. (Id. ¶¶ 5-6). The two-stage snow throwing system utilizes augers and an impeller: the augers

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id.

By including additional (non-correlating) paragraphs in his responsive statement of facts, Vakili's statement does not adhere to the Local Rules. See M.D. Pa. L.R. 56.1; (Doc. 41 at ECF 1-6). The court, therefore, disregards these non-compliant additional paragraphs. See Weitzner, 909 F.3d at 613-14; Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu, No. CV 2:14-3362, 2018 WL 585541, at *3 (D.N.J. Jan. 29, 2018) ("disregard[ing] all statements that do not conform to Rule 56 and Local 56.1.").

Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 36, 41). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

collect snow at the base of the machine as it moves forward, and the impeller tosses the snow out of the machine through a discharge chute. (Id. ¶ 4).

Once the engine is running, there are two ways to stop it: (1) moving the throttle control from full throttle "Rabbit" position to the engine "STOP" position or (2) moving the ignition key from the engine "run" position to the engine "STOP" position. (Id. ¶ 11). The engine controllers are located on the engine housings and face the operator on the rear of the snow thrower. (Id. ¶ 12). Inspections of the snow thrower by the parties' experts revealed that all relevant engine controls functioned properly and as designed: (1) the engine stopped if the throttle control or the ignition key were in the "STOP" position; (2) the engine would not start if the throttle control or the ignition key were in the "STOP" position; (3) when the engine was running, the augers and impeller would not activate unless the blade control lever was engaged; and (4) when the control levers were released, the augers and impellers would stop within one to two seconds. (Id. 13-14; Doc. 41 ¶¶ 13-14). The inspections also revealed that the snow thrower's engine recoil rope start feature was broken, requiring the operator to start the engine by using the push button starter, which require an extension cord and a 120-volt power source. (Doc. 36 ¶ 15).

By 2008, Vakili's coworker owned the snow thrower, and Vakili subsequently bought it from him. (Id. ¶ 23). Over the next 13 years, Vakili used the snow thrower

3

3 to 4 times per winter. (Id. ¶ 28).[2] During use, Vakili experienced snow clogs in the discharge chute. (Id. ¶ 30). Normally, when there was a clog, Vakili would shut down the snow thrower and use his hand to make sure the chute was clear. (Id. ¶¶ 31-32).[3] In fact, Vakili only remembers one occasion of using something other than his hands to clean the chute. (Doc. 33-5 (hereinafter "Vakili Dep.") 125:23-126:7). Before the incident that caused the accident, Vakili said he never attempted to unclog the snow thrower without first turning it off. (Id. ¶ 33).

Things were different on February 2, 2021. At one point while clearing snow on that date, Vakili noticed the chute was again clogged with snow. (Id. ¶ 42; Doc. 41 ¶ 42). He did not shut the engine off and attempted to clean the clog with his hands. (Vakili Dep. 164:5-20). His injury was immediate, (id. 164:14-17), and Vakili suffered significant injuries to his hand, requiring partial amputations of his pinkie and middle fingers, (id. 217:13-218:19).

A little over two years later, Vakili filed suit against MTD and Tractor Supply over his injury. To help prove his case, Vakili enlisted the help of Jack Krafchick, a consulting engineer. (Doc. 32-2 at 1). Krafchick evaluated MTD's

---

[2] Vakili argues this point is irrelevant and inadmissible, but does not contest its veracity. (Doc. 41 ¶ 28). Moreover, the case he cites is completely inapposite, only holding contributory negligence is not a defense in strict liability actions in Pennsylvania. See McCown v. Intl. Harvester Co., 342 A.2d 381, 382 (Pa. 1975). But this fact merely states that Vakili used the snow thrower at this cadence—not that he used the snow thrower correctly or incorrectly. (Doc. 36 ¶ 28).

[3] Vakili again objects to paragraphs 31-33 in a similar manner to his objection in paragraph 28. See footnote 2, supra. Again, Vakili does not dispute the veracity of the statements and the case his cites is inapplicable. (See Doc. 41 ¶¶ 31-33; McCown, 342 A.2d at 382).

design of the subject snow thrower using the "Safety Hierarchy" technique. (Id. at 8). He concluded that it would have been impossible for MTD to eliminate the hazards of the impeller on the snow thrower completely, nor would it have been able to provide adequate safeguarding. (Id. at 9). While he recognized MTD provided warnings about the potential hazards with its snow thrower, Krafchick faulted the company for failing to include safety equipment with the machine. (Id. at 9-10). Specifically, he believes the company could have easily provided a cleanout tool, to help clear clogs of snow with the machine. (Id. at 10). Krafchick opines it was MTD's failure to include a cleanout tool that caused Vakili's injuries. (Id.).

## II.  Legal Standards

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case *on which that party will bear the burden of proof at trial.*'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. See FED. R. CIV. P. 56(e)(2). Local Rule of Court 56.1 undergirds these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. Local Rule 56.1 further requires the nonmovant to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions "include reference to the parts of the record that support the statements." Id.

This court has wide discretion to sanction noncompliance with local rules, including Local Rule 56.1, which serves the important purpose of organizing the summary judgment record and facilitating efficient disposition of Rule 56 motions. See Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613-14 (3d Cir. 2018). Permissible sanctions for failure to strictly comply with Local Rule 56.1 include striking nonresponsive statements of fact or deeming a moving party's statement to be unopposed when not properly controverted. See id.; see also FED. R. CIV. P. 56(e);

7

M.D. PA. L.R. 56.1. In resolving the instant motion, the court has reviewed the parties' statements and has independently considered the entire record.

Admissibility of expert testimony is a question of law governed by Federal Rule of Evidence 702. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588-89 (1993). The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702; see also Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (explaining that the Rule 702 requirements constitute "the 'trilogy of restrictions on expert testimony: qualification, reliability and fit'" (quoting Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). The trial judge acts as a "gatekeeper," charged with excluding unreliable expert testimony. See Calhoun, 350 F.3d at 321. Nonetheless, Rule 702 embraces a "liberal policy of admissibility," under which it is preferable to admit any evidence that may assist the trier of fact. Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008) (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

### III. Discussion

Vakili brings claims against MTD and Tractor Supply (hereinafter, just "MTD") for negligence, breach of warranty, and strict liability. The court understands Vakili as only bringing a claim based on defective design, not for a lack

of warnings. For example, in his question presented to this court, Vakili argues "the subject snow thrower was defective for failing to include a cleanout tool." (Doc. 39 at 3). He follows that up later in his brief by saying the snow thrower was "defectively designed in that it lacked a handheld tool for cleaning discharge chutes to prevent injury."[4] (Id. at 13). Thus, to prevail, Vakili needs to show there is some evidence a jury could consider showing the lack of a cleanout tool caused his injuries. This is because causation is an element for all of his causes of action. See Tincher v. Omega Flex, Inc., 104 A.3d 328, 357-58 (Pa. 2014); Samuel-Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 33 (Pa. 2011).[5]

The only evidence in the record cited by Vakili to support causation is Krafchick's opinion in his report. (See Doc. 41 at ECF 1;[6] Doc. 39 at 21-22). For example, nowhere in Vakili's deposition does he say that if the subject snow thrower had a cleanout tool, he would have used one. (See generally Vakili Dep.). Therefore, if Krafchick's opinion on causation is excluded, then Vakili would have no evidence on that element to offer the jury. So, while he may be correct that the issue of

---

[4] Vakili's expert also does not assert the snow thrower was defective for inadequate warnings, but rather the only defect he identifies was "the failure to include a clean-out tool with the snow-thrower when it was manufactured." (Doc. 32-2 at 1).

[5] All parties agree this action is governed by Pennsylvania law. (Doc. 35 at 13; Doc. 39 at 1).

[6] This statement itself is part of additional paragraphs of facts which Vakili included in violation of the Middle District's local rules. See M.D. PA. L.R. 56.1. The court could simply ignore this statement. See Weitzner, 909 F.3d at 613-14. Nevertheless, even allowing for its consideration, Vakili cannot prevent summary judgment.

causation is generally one determined by the jury, (Doc. 39 at 19-21), Vakili still must provide some evidence a jury could rely on to find causation in this case.

Krafchick's report summarily concludes the "lack of a clean-out tool caused Mr. Vakili's injury." (Doc. 32-2 at 10). It is not clear what "methods and procedures of science" Krafchick used to come to his conclusion on causation. See Cohen v. Cohen, 125 F.4th 454, 464 (3d Cir. 2025) (quoting Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 80–81 (3d Cir. 2017)). He is a "consulting engineer," not a behavioral scientist. (Doc. 32-2 at ECF 20). Neither Krafchick in his report nor Vakili in his briefing explain what qualifications Krafchick has in human psychology such that he could say that if a cleanout tool had been provided, Vakili would have used it.

To the extent Vakili may wish to claim the idea of causation would be obvious, then Krafchick's opinion would not "fit" the current case. Cohen, 125 F.4th at 464. An expert's opinion must be one that "will help the trier of fact to understand the evidence or to determine a fact in issue." Id. (citation omitted). Thus, if Krafchick is not using his expertise to offer an opinion, it is not one that could help the jury and must be excluded. Because causation is an independent element in all of the claims he wishes to bring, Tincher, 104 A.3d at 357-58; Samuel-Bassett, 34 A.3d at 33, Vakili must point to at least *some* evidence a jury could consider to make a factual finding on causation. With no proper evidence on causation to present to the jury summary judgment is appropriate. Cf. Igwe v. Skaggs, 258 F. Supp. 3d 596, 609-15 (W.D. Pa. 2017) (granting summary judgment

10

in products liability case where plaintiff failed to provide sufficient evidence to convince jury of his claims).

## IV. Conclusion

The court will grant MTD's motion *in limine* to the extent it wishes to preclude Krafchick from offering testimony on causation. Having done that, Vakili has provided no other evidence which a jury could consider on the causation element. Therefore, the court will grant MTD's motion for summary judgment.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:   November 10th, 2025